## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY,<br>*Plaintiff*,<br><br>v.<br><br>CENTRA PARTNERS, L.L.C.,<br>*Defendant*. | §<br>§<br>§<br>§  CIVIL ACTION NO.: 3:21-cv-00163<br>§<br>§<br>§<br>§<br>§ |

### **WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S COMPLAINT**

Westchester Surplus Lines Insurance Company ("Westchester") files this Complaint and respectfully shows as follows:

### I.
### INTRODUCTION

1. This lawsuit involves a first-party property insurance dispute between Westchester and Centra Partners, LLC ("Centra"). Westchester issued a commercial property policy to first named insured Centra Partners, L.L.C. for the policy period June 5, 2018 to April 5, 2019 ("Policy"). One of the properties insured under the Policy was purportedly owned by additional named insured Centra Asset Partners, LLC ("Owner"), which property is located at 1700 East Northgate Drive, Irving, TX 75062, is known as the Tower Village Apartments ("Property"). The Property was deleted from coverage on July 1, 2018. According to Deed Records, the Property was purchased by DFW Tower Village LP, a Texas limited partnership in August 2017. DFW Tower Village LP is not a named

insured under the Policy and did not make a claim for loss or damage at the Property during the time the Property was listed as a covered property under the Policy, or otherwise.

2. However, nine months after the Property was deleted from the Policy, by Acord Property Loss Notice dated April 4, 2019, Centra submitted a claim for wind/hail damage to the Property's roofs, claiming a date of loss of June 5, 2018 (CAT 30). During the investigation process, Centra demanded appraisal and the property was inspected by the designated appraisers. When Centra would not agree to an umpire, it purportedly cancelled the appraisal process and withdrew its claim. Subsequently, Centra reinstated the appraisal, and agreed to an umpire. But when the appraisal panel inspected the Property with the umpire on or about December 2020, the Property had incurred new damage. Instead of appraising the damage as of the date of the claimed loss (June 5, 2018), the umpire and Centra's designated adjuster appraised the damage as of the date of the second inspection and rendered an award based on the second inspection. As a result, the appraisal award should be disregarded.

3. Moreover, the Policy's terms and conditions preclude coverage for Centra's Claim. Consequently, Westchester brings this action

## II.
## THE PARTIES

4. Westchester is an insurance company incorporated under the laws of Georgia with its principal place of business in Philadelphia, Pennsylvania.

5. Centra Partners, LLC ("Centra") is a Texas limited liability company with its principal place of business in Houston, Texas. Upon information and belief, Centra's

members include Sam R. Day, Darrell Lester, and Irving Wolf, each of which are citizens and residents of Texas. Centra's registered agent for service of process is Darrell R. Lester, 1612 Summit Avenue, Suite 200, Fort Worth, Texas 76102. .

## III.
### JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1367, and 2201, *et. seq.* as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and court costs, as the award issues by two of the three participants of the appraisal panel is for a Replacement Cost Value of $924,913.75 and an Actual Cash Value of $806,068.88, subject to the Policy's deductible and all other terms and conditions of the Policy.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Texas because the subject property is located in this District and a substantial part of the events giving rise to this action occurred in this District.

## IV.
### FACTUAL BACKGROUND

**A.   The Insurance Policy.**

8. Westchester issued commercial property insurance policy no. D3593339 to Centra for the policy period June 5, 2018 to April 5, 2019 ("Policy"). Subject to the terms and conditions, the Policy provides commercial property insurance with respect to the Property.

9. On July 1, 2018, Centra removed the Property from the Policy and received a premium refund.

10. Westchester asserts the Policy's terms, conditions, limitations, limits, exclusions, and endorsements. A true and correct copy of the Policy is attached as Exhibit A hereto and made a part hereof as though set forth verbatim. By way of example and not limitation, the Policy contains the following provisions:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM (Form CP 00 10 10 12)

A. **Coverage**

We [Westchester] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**. Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

   a. **Building**, meaning the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery; and

         (b) Equipment;

******

3. **Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

******

E. **Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

******

2. **Appraisal**

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a **competent and impartial appraiser** and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:
>
> a.  Pay its chosen appraiser; and
> b.  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we still retain our right to deny the claim.

3. **Duties In The Event of Loss Or Damage**

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:
   ******
   - **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

   - (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

   - (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

   - (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

   - (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

   - (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must

                do this within 60 days after our request. We will supply you with the necessary forms.

        (8)    Cooperate with us in the investigation or settlement of the claim.

    **b.**    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

\*\*\*\*\*\*

CAUSES OF LOSS - SPECIAL FORM (Form CP 10 30 09 17)

**A.**    **Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B.**    **Exclusions**

\*\*\*\*\*\*

2.    We will not pay for loss or damage caused by or resulting from any of the following:

\*\*\*\*\*\*\*\*\*

    d.    1.    Wear and tear;

           2.    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\*\*\*\*\*\*\*\*\*

           4.    Settling, cracking, shrinking or expansion;

\*\*\*\*\*\*\*\*\*

    m.    Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.    We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*\*\*\*\*\*\*

    c.    Faulty, inadequate or defective:

     \*\*\*\*\*\*\*\*\*

  (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  (3) Materials used in repair, construction, renovation or remodeling; or

  (4) Maintenance;

of part or all of any property on or off the described premises.

     \*\*\*\*\*\*\*\*\*

**C.** **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   \*\*\*\*\*\*\*\*\*

 c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

  (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

  (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

\*\*\*\*\*

SUBSIDIZED HOUSING AND STUDENT HOUSING EXCLUSION
(Form ACE0822 (04/16))

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

This insurance does not apply to loss or damage caused by or resulting from a Covered Cause of Loss if such loss or damage occurs to covered property with "Subsidized Housing" or "Student Housing."

"Subsidized Housing" means covered property with rental units occupied by a lessee whose accommodations are supported by government sponsored economic assistance programs.

"Student Housing" means property with rental units occupied by a lessee who is either (1) enrolled as a full-time undergraduate student or (2) enrolled as a part-time undergraduate student and is 25 years of age or younger.

All other terms and conditions remain unchanged.

*****

11. As explained below, Centra failed to demonstrate that the damages at issue resulted from a Covered Cause of Loss.

12. As explained below, the damages at issue did not occur during the policy period for which the Property was a covered property under the Policy.

13. As explained below, the damages to the Property were caused by excluded causes of loss and such damages are not covered by the Policy.

14. As explained below, Westchester properly determined that no coverage is afforded in excess of the Policy's $25,000 per Location per Occurrence deductible for Centra's claimed damages of wind/hail at issue.

15. As explained below, the Property had both Subsidized Housing and Student Housing; therefore, the Policy does not apply to loss or damage by a Covered Cause of Loss to such Property.

### B.     The Insurance Claim, Inspections, and Appraisal.

16.     On or about April 4, 2019, Centra made an insurance claim via Acord Property Loss Form to Westchester under the Policy for hail/wind damage to the Property purportedly occurring on June 5, 2018.

17.     On April 9, 2019, Westchester promptly acknowledged the Claim.

18.     On April 17, 2019, an insurance adjuster from Engle Martin, the designated adjuster per the Claims Adjustment endorsement to the Policy, met with Centra's representative, and inspected the Property.

19.     Several inspections ensued, including inspections with an engineering firm. The claims adjuster designated by the insured walked and carefully examined the Property's roofs, finding little to no damage from hail or wind was found on the roofs of the multiple buildings, much less damage that occurred from a June 5, 2018 event. The independent adjuster determined that the total damages equaled $13,039.07, an amount below the Policy's deductible. Westchester notified that the claimed damage was below the deductible on August 16, 2019.

20.     On December 11, 2019, Centra invoked the appraisal clause of the Policy. Centra and Westchester each designated an appraiser. The appraisers inspected the Property on February 20, 2020. When the appraisers could not reach an agreement, they designated an umpire. Before the umpire inspected the Property, he was "fired" by Centra. After some time, on June 16, 2020, Centra advised that it was reinstating the appraisal. The appraisers, this time with the umpire, inspected the Property on September 15, 2020.

By that time there had been several wind and hail storms in the area and the roofs on the Property had suffered additional damages.

21. On January 4, 2021, Centra's designated appraiser and the umpire signed an appraisal award noting a replacement cost value of $924,913.75 and an actual cash value of $806,068.88, and that "the insurance carrier is to receive credit for the deductible and all prior payments made with respect to this loss. This Award does not alter the terms and conditions of the insurance policy". Herein, "the Award".

22. The Award is erroneous as it was obtained without authority or by mistake or not in compliance with the Policy.

23. The Award does not provide an assessment of the amount of damages as of the date of the loss. Instead, it assigns an amount of damages as of the date of the September 2020 inspection which was over two years after the date of the loss, and after several additional storms had impacted the Property.

24. Moreover, the purported appraisal award is incomplete. No estimate of how the Award was calculated for the several buildings composing the Property was provided.

25. The appraisal award is erroneous because, among other things and as discussed above, the award was made as a result of fraud, accident, or mistake; and the award was not in compliance with the requirements of the Policy.

26. As a result of the umpire's and Centra's appointed appraiser's issuing an erroneous Award, Westchester is now required to defend against an erroneous appraisal and incur attorneys' fees and costs to bring this action.

27. The Award does not reflect the covered damages under the Policy for any or all of the following reasons:

a. It is Centra's burden to show it has an insurable interest in the Property. Based on the Special Warranty Deed on file with Dallas County Deed Records, Centra is not the owner of the Property and as such does not have an insurable interest in the Property.

b. It is Centra's burden to show that the damages that the appraisal panel awarded were for damages incurred during the policy period.

c. There is no coverage for the full amount of the Award because the Award does not segregate between covered and non-covered causes of loss and the Policy's exclusions for any one of the following exclusions preclude coverage: wear and tear; deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself; settling, cracking, shrinking or expansion; neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss; faulty, inadequate or defective workmanship, repair, construction, materials used in repair, construction, renovation or remodeling; or maintenance; and/or the lack of a storm caused opening creating damage.

d. There is no coverage for the Award because the Policy's Property Subsidized Housing And Student Housing Exclusion precludes coverage since, according to the Statement of Values on file with Westchester ("SOV"), the Property includes Subsidized and Student Housing, *i.e.* rental units occupied by a lessee

> (1) whose accommodations are supported by governmental sponsored economic assistance programs [20% per SOV] and (2) who qualifies as an undergraduate student (40% per SOV].
>
> e. There is no coverage under the Policy because Centra provided late notice of its claim.

28. All conditions precedent necessary for Centra to recover under the Policy have not been satisfied by Centra, including by way of example and not limitation, providing requested information about the date of loss, the extent of the damages as of the date of the loss, presenting itself for an examination under oath, and providing a sworn proof of loss.

## V.
## CAUSES OF ACTION

### A. Declaratory Judgment.

29. Westchester re-alleges all preceding paragraphs herein.

30. Pursuant to 28 U.S.C. § 2201, Westchester seeks a judicial declaration that Centra is not entitled to payment under the Policy in the amount of the Award or for any claimed damages to the Property.

31. As demonstrated above, the Property did not suffer hail or wind damage to the extent of the damage appraised or in the amount of the Award, as of date of loss claimed by Centra.

32. Centra improperly seeks coverage for damage not caused by a Covered Cause of Loss occurring during the Policy Period.

33. The Policy's conditions, exclusions and limitations bar coverage for the loss claimed by Centra.

34. Westchester requests that the Court declare the rights and duties of Westchester under the Policy, including that Centra is not the owner of the Property and does not have an insurable interest in the Property and that Westchester owes no duty to pay the insurance claim or the Award.

35. Further, pursuant to 28 U.S.C. § 2201, Plaintiff seeks a judicial declaration that the Award be set aside.

36. Westchester seeks a declaration that (1) the Award was made without authority; (2) the Award was made as a result of accident or mistake; and/or (3) the Award was not in compliance with the requirements of the Policy.

37. Westchester seeks a declaration that Centra failed to cooperate in the investigation or settlement of the claim as required by the Policy

38. Westchester seeks a declaration that Centra failed to provide timely notice of the claim.

39. Westchester seeks a declaration that Centra failed to mitigate its damages.

40. Westchester seeks a declaration that the Policy, as to the Property, should be rescinded because Centra had no insurable interest in the Property and/or the Property includes Subsidized and Student Housing.

**B.   Breach of Contract.**

41.  Westchester re-alleges all preceding paragraphs herein.

42. Under the Policy, Centra had a contractual duty to timely provide notice of the loss and, once it invoked the appraisal process, timely participate in it. Centra did neither.

43. Centra breached the Policy by failing to provide timely notice of its claim, which late notice prejudiced Westchester since it was unable to inspect the Property close to the alleged date of loss.

44. Central breached the Policy by failing to comply with its duty to timely participate in the appraisal process, once invoked, and such failure lead to an erroneous Award.

45. As a result of Centra's breaches, Westchester was damaged because it was forced to expend money to engage in the adjustment and appraisal processes, and is now required to defend against a late claim where the scope of damages have changed since the initial date of loss and against an erroneous Award.

## VI.
### ATTORNEYS' FEES

46. Westchester re-alleges all preceding paragraphs herein.

47. Because of the conduct of Defendants, Westchester has been compelled to engage the services of counsel to prosecute this action.

48. Westchester is entitled to recover a reasonable sum for the necessary services of counsel in the preparation and trial of this action and for any appeals.

49. Westchester is entitled to attorney's fees under the Texas Civil Practices and Remedies Code Section 38.001(8) for its breach of contract claims. In that regard,

Westchester has complied with all conditions precedent necessary to recover attorneys' fees in this action in accordance with Chapter 38.

## VII.
### CONCLUSION AND PRAYER

Based on the foregoing, Westchester respectfully asks the Court for judgment in its favor as follows:

a. Declaring that Centra is not entitled to payment under the Policy for the insurance claim at issue because Centra has not established an insurable interest or that it has a covered cause of loss occurring during the policy period in excess of the Policy's deductible;

b. Declaring that Centra is not entitled to payment under the Policy for the insurance claim at issue because the Policy's conditions, exclusions and limitations bar such coverage;

c. Declaring that the appraisal award should be set aside because (1) the award was made without authority; (2) the award was made as a result of accident or mistake; and/or (3) the award was not in compliance with the requirements of the Policy;

d. Declaring the Policy is rescinded as to any coverage for the Property;

e. Finding that Centra breached the Policy;

f. Awarding Westchester its actual and consequential damages;

g. Awarding Westchester its attorney's fees and pre- and post-judgement interest as allowed by law; and

h. For such other and further relief to which it may be justly entitled, whether at law or in equity.

Respectfully submitted,

*/s/ Alicia G. Curran*
Alicia G. Curran
State Bar Number 12587500

**COZEN O'CONNOR**
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Facsimile: (214) 462-3299
acurran@cozen.com

**ATTORNEYS FOR PLAINTIFF**
**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**